**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUDITH WHITWORTH,

         Plaintiff,

  v.

FIDELITY MORTGAGE COMPANY et al.,

         Defendants.

_____/

No. C 05-04725 MHP

**MEMORANDUM & ORDER**

**Re: Motion for Default Judgment**

      Plaintiff Judith Whitworth ("Whitworth" or "plaintiff") filed this action against defendant companies Fidelity Mortgage Company ("Fidelity"), Pacific Home Brokers ("Pacific"), Long Beach Mortgage Company, Washington Mutual and First California Title and individual defendants Bert Coker ("Coker"), Joel Atwater ("Atwater"), Scott Tucker and Does 1 through 50 (collectively, "defendants"), alleging violations of the federal Truth in Lending Act ("TILA"), the federal Real Estate Settlement Procedures Act ("RESPA"), California's Consumer Legal Remedies Act ("CLRA"), California's Business and Professions Code, fraud, breach of fiduciary duty, negligence, negligent training and supervision and infliction of emotional distress.  Now before the court is plaintiff's motion for default judgment against defendant Atwater.  Having considered the arguments and submissions of the parties, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

      Plaintiff's claims arise out of an alleged "bait and switch" scheme in which defendants promised plaintiff that they would help plaintiff secure a home loan with certain terms and conditions, but in reality induced plaintiff to sign a loan contract with significantly less favorable

United States District Court

For the Northern District of California

1    terms and conditions.  Compl., Docket No. 1, ¶ 2.  In October 2004, plaintiff met defendants Atwater

2    and Tucker, who represented that they could make all of the necessary arrangements to help plaintiff

3    purchase her first home.  Id. ¶ 24.  Plaintiff asserts that Atwater said he worked for defendant Coker,

4    a licensed real estate broker who owned and operated Fidelity, a mortgage loan business, and

5    Pacific, a real estate brokerage business.  Id. ¶ 13; Whitworth Dec., Docket No. 92, ¶ 4.  However,

6    unbeknownst to plaintiff, Atwater was not licensed to sell real property or originate home loans.

7    Compl. ¶ 13.  After plaintiff agreed for Atwater to help her find a home, Atwater filled out a loan

8    application for plaintiff and subsequently informed plaintiff that she had been pre-approved for a

9    $320,000 loan.  Id. ¶ 25.  Atwater showed plaintiff a house in Antioch, California, which Atwater

10   said would only cost plaintiff $2400 per month.  Id. at ¶¶ 26 & 29; Whitworth Dec. ¶ 4.  Based on

11   Atwater's representations, plaintiff made an offer on the house which was subsequently accepted.

12   Compl. ¶¶ 27-28.

13        Once the offer was accepted, Atwater and Tucker prepared a loan application on plaintiff's

14   behalf, in which they inflated plaintiff's income and falsely represented that plaintiff had a Wells

15   Fargo account containing $7000.  Id. ¶ 28.  Although Atwater and Tucker assured plaintiff that the

16   payments on her home loan would not exceed $2400 a month, the monthly payments turned out to

17   be $2871 on two loans.  Id. ¶ 29.  Atwater and Tucker assured plaintiff that they would refinance her

18   home loans within six months into one consolidated loan that would reduce the monthly payments

19   by 50% at no cost to plaintiff, but they never did so.  Id. ¶¶ 31-32.  Ultimately, plaintiff was unable

20   to refinance the loan, and by May 2007 plaintiff vacated the house.  Whitworth Dec. ¶ 11.  In

21   February 2008, plaintiff lost the house in foreclosure.  Id. ¶ 13.

22        Plaintiff filed this action against defendants on November 17, 2005, alleging the following

23   causes of action against some or all defendants: (1) violation of TILA, 15 U.S.C. section 1601 et

24   seq.; (2) violation of RESPA, 12 U.S.C. section 2601 et seq.; (3) unlawful, fraudulent, and unfair

25   business practices under California's Business and Professions Code section 17200 et seq.; (4) false

26   advertising under California's Business and Professions Code section 17500 et seq.; (5) violation of

27   CLRA, California Civil Code section 1750 et seq.; (6) fraud; (7) breach of fiduciary duty; (8)

28   negligence; (9) negligent training; and (10) negligent supervision.  With respect to defendant

**United States District Court**
For the Northern District of California

1   Atwater, against whom the instant action is brought, plaintiff alleged all causes of action except

2   negligent training and negligent supervision.  Atwater never answered or otherwise defended against

3   plaintiff's complaint, and on July 24, 2006, the court entered a default against Atwater.  See Docket

4   No. 26.  Plaintiff obtained judgments against Coker, Fidelity and Pacific in bankruptcy court, and

5   plaintiff's claims against all defendants except Atwater were dismissed as of March 3, 2009.  See

6   Docket Nos. 72, 85, & 89.

7        Plaintiff now seeks a default judgment against Atwater, who has allegedly fled the

8   jurisdiction after being charged with arson.  Whitworth Dec. ¶ 12.  Plaintiff seeks to recover the

9   following sums: (1) $49,137.06 in compensatory damages; (2) $10,000 in punitive damages; (3)

10  $27,288 for violating RESPA; (4) $22,261 that Atwater received as a result of a transaction he was

11  not licensed to perform; and (5) $39,646.03 in attorneys' fees and costs.

12

13  LEGAL STANDARD

14  Entry of Default Judgment

15        After entry of a default, a court may grant a default judgment on the merits of the case.  See

16  Fed. R. Civ. P. 55(b).  "The district court's decision whether to enter a default judgment is a

17  discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court

18  may consider in exercising that discretion include:

19        (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
          claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
20        action; (5) the possibility of a dispute concerning material facts; (6) whether the
          default was due to excusable neglect, and (7) the strong policy underlying the Federal
21        Rules of Civil Procedure favoring decisions on the merits.

22  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Because default has already been entered

23  in this case, the court must take as true all factual allegations in plaintiff's complaint except for those

24  related to the amount of damages.  See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18

25  (9th Cir. 1987).

26

27

28

3

**United States District Court**
For the Northern District of California

DISCUSSION

I.      Determining Whether to Grant Default Judgment

In this action, a default has already been entered against Atwater, and accordingly, under Federal Rule of Civil Procedure 55(b) the court has the discretion to grant default judgment against Atwater.  In exercising this discretion, the court may consider factors such as the possibility of prejudice to the plaintiff, the merits of the substantive claim, the sufficiency of the complaint, the amount of money at stake in the action, the possibility of a dispute over material facts, whether the default was due to excusable neglect, and the strong policy favoring decisions on the merits.  Eitel, 782 F.2d at 1471-72.  In considering these factors, the court takes as true all factual allegations in plaintiff's complaint, except for those allegations pertaining to damages.  TeleVideo, 826 F.3d at 917-18.

The court finds that an overall consideration of the factors supports granting default judgment against Atwater.  Firstly, plaintiff will be prejudiced if default judgment is not entered. Atwater's refusal to participate in settlement or mediation conferences or even acknowledge plaintiff's complaint demonstrates that this judgment is the only means by which plaintiff can establish Atwater's liability and recover damages for her losses.

Secondly, even under the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) that is required of allegations that sound in fraud, plaintiff's complaint is sufficiently factually detailed as to the "who, what, when, where, and how" of Atwater's alleged conduct and the resulting harms to plaintiff for the court to address whether the claims have substantive merit.  See Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  Additionally, as is required for claims sounding in fraud, plaintiff has set forth facts regarding Atwater's conduct "from which an inference of scienter could be drawn."  See id. at 628, quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1546 (9th Cir. 1994) (en banc).

Thirdly, the court is satisfied that plaintiff's claims against Atwater have substantive merit. Because the claims are mainly grounded in fraud, in order to prevail plaintiff has to show (1) misrepresentation (e.g. false representation, concealment or non-disclosure); (2) scienter, or knowledge of falsity; (3) an intent to induce reliance; (4) justifiable reliance; and (5) resulting

4

United States District Court

For the Northern District of California

1   damage.  Bank of the West v. Valley Nat. Bank of Ariz., 41 F.3d 471, 477 (9th Cir. 1994), quoting

2   Hackethal v. National Casualty Co., 189 Cal. App.3d 1102, 1111 (1987).  Taking plaintiff's

3   allegations as true, Atwater made false representations regarding his ability to secure loans for

4   plaintiff at a monthly payment not exceeding $2400 or to refinance higher loans to a lower monthly

5   payment.  Plaintiff has alleged enough facts for the court to infer that Atwater knew these

6   representations were false and that he intended to induce plaintiff to rely on these false

7   representations.  Finally, plaintiff did rely on these representations and suffered damages in the form

8   of higher mortgage payments and foreclosure on her house.

9        Fourthly, based on the information provided by plaintiff about the amount of money lost as a

10  result of Atwater's conduct, the court finds that the amount is substantial enough that it favors

11  granting plaintiff a remedy for recovering that sum.

12       Fifthly, there is no indication that there is any dispute over material facts.  Atwater has had

13  ample time to challenge plaintiff's allegations, and due to his failure to do so, the court takes all of

14  plaintiff's factual allegations as true, except for those relating to damages.  TeleVideo, 826 F.3d at

15  917-18.

16       Sixthly, this is not a situation where the default was due to excusable neglect.  Atwater has

17  not merely been late in responding to plaintiff's allegations, he has entirely failed to respond to the

18  allegations or participate in these proceedings since plaintiff filed her complaint in November 2005.

19  Accordingly, these factors all support the grant of default judgment.

20       Finally, the court is mindful of "the general rule that default judgments are ordinarily

21  disfavored" and that "[c]ases should be decided upon their merits whenever reasonably possible."

22  Eitel, 782 F.2d at 1472.  Here, however, it does not seem reasonably possible that the action can be

23  decided upon its merits.  Plaintiff filed this action in November 2005, and in the more than three

24  years since the action was filed, Atwater has not answered or defended against the complaint or

25  otherwise made any contact with the court regarding this action.  Furthermore, plaintiff indicates that

26  Atwater has fled the jurisdiction.  Atwater's notable absence throughout these proceedings makes it

27  unlikely that the case against him can be decided on its merits.  Accordingly, the court finds it

28  appropriate to grant default judgment against defendant Atwater.

United States District Court

For the Northern District of California

II.     Calculation of Damages

        Having found that a default judgment should be entered for plaintiff against Atwater, the court next turns to the issue of what relief to award plaintiff.  Although the court, where a default has been entered, takes plaintiff's allegations as true for the purposes of determining whether to grant entry of default judgment, it does not take plaintiff's allegations as true for the purpose of calculating damages.  TeleVideo, 826 F.3d at 917-18.  The court may establish damages on default via an evidentiary hearing, through detailed declarations or affidavits, or by reference to a magistrate judge's knowledge of the record.  See, e.g., James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).  The court finds that plaintiff has not submitted sufficient documentation and testimony regarding her claimed damages for the court to determine the dollar amount that should be awarded.  Pursuant to 28 U.S.C. section 636(b)(1)(B) and (C) the court refers this matter to a magistrate judge to hold a hearing on the issue of damages and to make findings of fact and recommendations regarding the specific amounts that should be awarded for each requested form of relief.  At this hearing, plaintiff will need to provide the magistrate judge with evidentiary support, such as documents, affidavits or witness or expert testimony, corroborating plaintiff's claimed damages.  In the remainder of this section, the court provides guidance to plaintiff and the magistrate judge regarding the different types of damages that plaintiff has claimed.

        A.      Compensatory Damages

        "The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.'" Vasa N. Atlantic Ins. Co. v. Golden Eagle Ins. Co., 1994 WL 285027, *8 (N.D. Cal. 1994) (Walker, J.), quoting Batson v Strehlow, 68 Cal. 2d 662, 674 (1968).  This relationship imposes upon the agent a duty of acting in the highest good faith and precludes the agent from obtaining any advantage over his principal in a transaction.  Id.  "[T]he fraudulent breach of fiduciary duty is a tort, and the faithless fiduciary is obligated to make good the full amount of the loss of which his breach of faith is a cause." Pepitone v. Russo, 64 Cal. App. 3d 685, 688 (1976).  Where the defrauding party has a fiduciary relationship with the victim, the measure of damages tends to "give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been had the promisor performed" his duty.  Id. at

**United States District Court**
For the Northern District of California

689.  Compensatory damages may also be awarded for emotional distress that can be established by testimony or inferred from the circumstances.  Johnson v. Hale, 940 F.2d 1192, 1193 (9th Cir. 1991).

Plaintiff alleges, and the court takes as true, that Atwater breached his obligation and fiduciary duty to plaintiff by engaging in a "bait and switch" scheme in which he represented to plaintiff with knowing falsity that he would obtain for plaintiff a home loan with certain conditions. Plaintiff seeks to recover compensatory damages for out-of-pocket damages incurred and for emotional distress.

With respect to out-of-pocket damages, plaintiff asserts that her out-of-pocket damages include the down payment on the house, mortgage payments, property taxes and property insurance. Whitworth Dec. ¶¶ 14 & 17.  Some of these costs, such as property taxes and property insurance, would have been incurred by plaintiff even if Atwater had not acted fraudulently.  However, it was Atwater's fraudulent conduct that resulted in plaintiff's ultimately having to vacate her house and lose the benefit of these expenses that were incurred for the house, and it should have been reasonably foreseeable to Atwater that plaintiff would be unable to keep the house—and the benefits of the expenditures towards the house—with a mortgage having substantially higher payments and less favorable terms and conditions than the mortgage Atwater promised plaintiff.  Additionally, Atwater should also be held liable for other costs that plaintiff subsequently incurred as a result of having to vacate her home, such as the cost of moving into an apartment.  Therefore, the court finds it appropriate to award plaintiff all of these types of out-of-pocket costs.  For the hearing before the magistrate judge, plaintiff should be prepared to provide evidence documenting these out-of-pocket damages that she has incurred.

With respect to plaintiff's request for emotional distress damages, the court finds it credible from plaintiff's testimony and from the overall circumstances that plaintiff has suffered emotional distress as a result of Atwater's conduct.  Therefore, at the hearing the magistrate judge should make findings of fact regarding plaintiff's emotional distress and make recommendations regarding an appropriate award.  Although plaintiff is not required to submit evidence of economic loss or medical evidence of mental or physical symptoms stemming from the humiliation, see Johnson, 940 F.2d at 1193, she may provide this type of evidence if it is available.

**United States District Court**
For the Northern District of California

1    Finally, the court notes that a payment that is made by one tortfeasor diminishes the claim

2    against a joint tortfeasor.  Seymour v. Summa Vista Cinema, 809 F.3d 1385, 1389 (9th Cir. 1987).

3    Here, plaintiff obtained judgments against defendants Coker, Fidelity and Pacific in bankruptcy

4    court, the terms of which were not provided to this court.  The general rule of compensatory

5    damages is that "a plaintiff is not entitled to more than a single recovery for each distinct item of

6    compensable damage supported by the evidence."  Theme Promotions, Inc. v. News Am. Mktg. FSI,

7    546 F.3d 991, 1005 (9th Cir. 2008), citing Tavaglione v. Billings, 4 Cal. 4th 1150, 1158-59 (1993).

8    Accordingly, in determining the amount of compensatory damages that should be awarded plaintiff,

9    the magistrate judge should consider the extent to which plaintiff has or has not been made whole

10   already by the other defendants.  Accordingly, for the hearing before the magistrate judge, plaintiff

11   should be prepared to provide evidence of the amount of compensatory damages, if any, that has

12   already been awarded plaintiff in connection with other defendants in this case.

13       B.    Punitive Damages

14   Under California law, punitive damages are appropriate where "the defendant's acts are

15   reprehensible, fraudulent or in blatant violation of law or policy."  Tomaselli v. Transamerica Ins.

16   Co., 25 Cal. App. 4th 1269, 1287 (1994); see also Cal. Civ. Code § 3294(a).  For punitive damages

17   to be awarded, the plaintiff must establish by clear and convincing evidence that the defendant is

18   guilty of fraud, oppression or malice.  Henry v. Lehman Commercial Paper, Inc., 471 F.3d 977, 998

19   (9th Cir. 2006).  Courts in California have awarded punitive damages for fraudulent

20   misrepresentations by real estate brokers.  See, e.g., Wyatt v. Union Mortgage Co., 24 Cal. 3d 773,

21   790 (1979).

22   The court is satisfied that punitive damages are warranted in this case.  This is not a case

23   where the defendant merely acted negligently in breaching his fiduciary duty to plaintiff.  Rather,

24   plaintiff has alleged, and the court takes as true, that Atwater affirmatively represented to plaintiff

25   that he could secure a mortgage at certain terms and conditions.  After failing to secure this promised

26   mortgage, Atwater made further affirmative representations to plaintiff that he would be able to

27   refinance the loan to reduce the payments to the initially promised amount.  From Atwater's total

28   failure to deliver, his repeated misrepresentations, his failure to respond in any way to plaintiff's

8

1    complaints or to this law suit, and his finally absconding, the court can reasonably infer that he never

2    intended to make good on his promises to plaintiff.  Accordingly, the finds that plaintiff has

3    established by clear and convincing evidence that she is entitled to punitive damages.  The

4    magistrate judge should consider and make recommendations on the amount of punitive damages

5    that is appropriate in this case.

6            C.      Damages for Violation of RESPA

7            RESPA is a federal law that "prohibits the giving or receiving of fees for referral as part of a

8    real estate settlement service but permits fees that are paid for facilities actually furnished or services

9    actually performed in the making of a loan."  Schuetz v. Banc One Mortgage, 292 F.3d 1004, 1005-

10   06 (9th Cir. 2002); see also 12 U.S.C. § 2607(a), (c)(2).  One type of fee is a yield spread premium

11   ("YSP"), a lump sum paid by the lender to the broker that is based on the difference between the

12   interest rate at which the broker originates the loan and the market rate offered by the lender.

13   Schuetz, 292 F.3d at 1005.  RESPA does not prohibit YSPs per se, but in some cases a YSP may

14   violate RESPA if the amount does not correlate with the services provided by the broker and the

15   total compensation paid for these services.  Id. at 1014; see also Geraci v. Homestreet Bank, 347

16   F.3d 749, 751 (9th Cir. 2003).  In order to determine whether a YSP is permissible under RESPA,

17   courts apply a two-prong test.  First, the court must determine "whether goods or facilities were

18   actually furnished or services were actually performed for the compensation paid."  Schuetz, 292

19   F.3d at 1010.  If goods or facilities were furnished or services were performed, the second prong is

20   to determine "whether the payments are reasonably related to the value of the goods or facilities that

21   were actually furnished or services that were actually performed."  Id.  For the second prong, "the

22   pivotal question is whether a mortgage broker's total compensation is reasonable," not just whether

23   the individual YSP is reasonable.  Id. at 1011.  Total compensation must be reasonably related to the

24   total value of the goods or facilities provided or the services performed, and should be

25   commensurate with the amount normally charged for similar services in similar transactions in

26   similar markets.  Id.

27           Plaintiff alleges that in addition to paying a commission on the purchase of the property, she

28   also paid a YSP and an origination fee, and that the amount that she paid for these fees was much

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   larger than what were charged to other similarly situated borrowers, such as her son-in-law Scott

2   Sanders (who has brought a related case against Atwater in this court).  Whitworth Dec. ¶ 15.

3   Plaintiff asserts that these fees are not reasonably related to the services provided to her, and

4   accordingly, she is entitled to recover treble damages for this violation of RESPA.  See 12 U.S.C.

5   § 2602(d)(2).

6          Based on the facts alleged by plaintiff, the court finds under the first prong of the test that

7   services were provided to plaintiff by Atwater.  However, the court does not have enough

8   information to evaluate under the second prong whether the fees paid by plaintiff were reasonably

9   related to the value of the services provided.  For the hearing before the magistrate judge, plaintiff

10   should be prepared to provide evidence of the total compensation provided to Atwater, as well as

11   evidence of the amount normally charged of similarly situated buyers for similar services, so that the

12   magistrate judge can consider whether Atwater's total compensation in this case was commensurate

13   with the value of the services provided.  The court notes for plaintiffs' benefit that the settlement

14   statement that plaintiffs provided to the court does not document the total compensation provided to

15   Atwater, as opposed to other defendants.  Accordingly, plaintiffs should be prepared to present

16   additional evidence on this point at the hearing.

17          D.     Disgorgement Pursuant to California Unfair Business Practices Law

18          In California, it is "unlawful for any person to engage in the business, act in the capacity of,

19   advertise or assume to act as a real estate broker or a real estate salesman within this state without

20   first obtaining a real estate license."  Cal. Bus. & Prof. Code § 10130.  A real estate broker is "a

21   person who, for a compensation or in expectation for a compensation . . . [s]ells or offers to sell,

22   buys or offers to buy, solicits prospective sellers or  purchasers of, solicits or obtains listings of, or

23   negotiates the purchase, sale or exchange or real property or a business opportunity."  Cal. Bus. &

24   Prof. Code § 10131(a).  California's unfair competition law, which is codified at California Business

25   and Professions Code section 17200 et seq. and which proscribes any unlawful business practice,

26   "borrows violations of other laws and treats them as unlawful practices that the unfair competition

27   law makes independently actionable."  Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.

28   4th 163, 180 (1999) (internal quotations omitted).  Accordingly, acting as real estate broker without

10

a license is a violation of state business law that may be actionable under state unfair competition law. Although unfair competition law does not provide for compensatory damages, it can provide a person with restitution of money that was once in that person's possession. Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178 (2000); see also Cal. Bus. & Prof. Code § 17203.

Here, the court takes as true plaintiff's allegation that Atwater was not licensed to perform the real estate services provided to plaintiff. Because Atwater's actions violated state business law, plaintiff may use state unfair competition law to disgorge Atwater of any money plaintiff paid him in connection with these unlawful business practices. For the hearing before the magistrate judge, plaintiff should be prepared to provide evidence as to what money plaintiff paid Atwater in connection with Atwater's provision of real estate services.

As a final note on this issue, and for plaintiff's benefit, the court notes that the settlement statement that was provided to the court is insufficient evidence to establish the amount that plaintiff paid to Atwater. See Whitworth Dec., Exh. 1. Although plaintiff alleges that this statement shows that she paid $22,761 in real estate and mortgage brokerage fees, the statement does not clearly indicate this total amount, so plaintiff should be prepared to demonstrate how she arrived at this figure. Furthermore, even if plaintiff can establish the total amount paid in real estate and mortgage brokerage fees, she must also provide evidence corroborating her allegation that Atwater was paid all but $500 of this amount.

E.    Attorneys' Fees and Costs

Federal Rule of Civil Procedure 54(d) permits an award of costs other than attorneys' fees to a prevailing party as a matter of course. See Fed. R. Civ. Pro. 54(d)(1). This district's Civil Local Rule 54-1 sets out the procedures by which a prevailing party claiming costs must serve and file a bill of costs, including attaching appropriate documentation to support each item claimed. See N.D. Cal. Civ. L.R. 54-1(a). Federal Rule of Civil Procedure 54(d) also permits a party to file a motion for attorneys' fees, specifying the statute or grounds entitling the movant to the award. See Fed. R. Civ. Pro. 54(d)(2)(B)(ii). This district's Civil Local Rule 54 sets out the specific procedures for requesting attorneys' fees, including providing a statement of the services rendered by each person, a summary of the time spent, a statement describing the manner in which time records were

United States District Court

For the Northern District of California

1  maintained, a description of the relevant qualifications and experience, and a statement of the

2  customary hourly charges of each person.  See N.D. Cal. Civ. L.R. 54-6(b).

3          Plaintiff requests attorneys' fees and costs on the ground that a party is entitled to recover

4  attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 for enforcing the law

5  that requires one who is engaged in the real estate or mortgage brokerage services be licensed.  It is

6  not clear to the court that section 1021.5 applies, as this section refers to "an important right

7  affecting the public interest."  See Cal. Code Civ. Proc. § 1021.5; see also Riverside Sheriffs' Ass'n

8  v. County of Riverside, 152 Cal. App. 4th 414, 422 (2007).  However, it appears to the court that

9  plaintiff may recover attorneys' fees and costs under RESPA, which states that "[i]n any private

10  action . . . the court may award to the prevailing party the court costs of the action together with

11  reasonable attorneys fees."  12 U.S.C. § 2607(d)(5).  It appears that plaintiff's most viable argument

12  for claiming attorneys' fees lies with this provision of RESPA, rather than with section 1021.5 or

13  with other California statutes such as Business and Professions Code section 17200 (which generally

14  provides attorneys' fees in connection with class actions) or California Civil Code section 1750

15  (which applies to consumer purchases of goods and services but may not include the sale of real

16  property).  Therefore, the prayer for attorneys' fees and costs will be treated under RESPA and

17  granted in an amount to be determined by the Magistrate Judge.

18          For the hearing before the magistrate judge, plaintiff should be prepared to provide more

19  specific information on the specific attorneys' fees and costs being claimed.  For attorneys' fees, the

20  local rules require that plaintiff provide information regarding the specific services rendered, the

21  amount of time spent for each of those services, and the manner in which time records were

22  maintained, as well as a description of the attorney's relevant qualifications and experience so that

23  the court can determine whether this hourly charge is reasonable.  For costs, plaintiff needs to

24  provide specific information about what those costs are.

25  /////

26  /////

27  /////

28  /////

**United States District Court**
For the Northern District of California

CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiff's motion for default judgment and **REFERS** the matter to Magistrate Judge Maria Elena James pursuant to 28 U.S.C. section 636(b)(1)(B) and (C) for the purpose of conducting an evidentiary hearing and submitting a report and recommendation on the amount of damages, attorneys' fees and costs to be awarded.

IT IS SO ORDERED.

Dated: May 4, 2009

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California