# UNITED STATES DISTRICT COURT

## Northern District of California

| | |
|---|---|
| JUDITH WHITWORTH,<br><br>  Plaintiff,<br>   v.<br>FIDELITY MORTGAGE COMPANY, *et al.*,<br><br>  Defendants.<br>_____/ | No. C 05-4725 MHP (MEJ)<br><br>**REPORT AND RECOMMENDATION FOLLOWING EVIDENTIARY HEARING ON DAMAGES** |

## I. BACKGROUND

On May 5, 2009, the Honorable Marilyn Hall Patel, the presiding judge in this matter, issued a Memorandum & Order on Plaintiff Judith Whitworth's Motion for Default Judgment (Dkt. #99). In her Order, Judge Patel granted default judgment in favor of Plaintiff and against Defendant Joel Atwater. With respect to Plaintiff's requests for damages, Judge Patel found that Plaintiff had not submitted sufficient documentation and testimony to enable the Court to determine the proper amount to award. As a result, Judge Patel referred the matter to the undersigned to hold an evidentiary hearing on the issue of damages and to make findings of fact and recommendations regarding the specific amounts that the Court should award. In her Order, Judge Patel also instructed Plaintiff that at the hearing she will need to provide evidentiary support to corroborate her claimed damages, such as documents, affidavits, or witness or expert testimony. With respect to each area of damages Plaintiff requested, Judge Patel then outlined in her Order what evidence Plaintiff would need to submit and what questions she would need to address to enable the undersigned to make a recommendation regarding the proper amount of damages recoverable.

On July 31, 2009, Plaintiff filed a second Motion for Default Judgment (Dkt. #103) before the undersigned and submitted a revised Declaration with supporting documents (Dkt. #102). In preparation for the evidentiary hearing, the undersigned reviewed Plaintiff's Motion and supporting

materials and determined that Plaintiff had not addressed the evidentiary questions raised by Judge Patel in her Order. Accordingly, on September 3, 2009, the undersigned issued an Order listing specific questions Plaintiff would need to address at the hearing. In response, Plaintiff filed a Supplemental Brief in Support of Entry of Default Judgment (Dkt. #105), wherein she clarified the categories of damages she is seeking, and a Supplemental Declaration (Dkt. #106), wherein Plaintiff set forth additional facts in support of her damages requests.

On September 24, 2009, the undersigned held the evidentiary hearing on damages. After reviewing Plaintiff's submissions and considering the oral argument presented during the hearing, the undersigned makes the following findings and recommendations.

## II. DISCUSSION

**A. Compensatory Damages**

### 1. Out-of-Pocket Damages

With respect to compensatory damages, Judge Patel found that Plaintiff is entitled to an award of her out-of-pocket damages, including her down payment on her house, mortgage payments, property taxes, property insurance payments, and moving expenses. (Dkt. #99 at 7.) Judge Patel indicated that Plaintiff was to submit evidence documenting these out-of-pocket damages at the evidentiary hearing. (*Id*.)

Looking first at Plaintiff's mortgage payments, Plaintiff has submitted Customer Account Activity Statements from Washington Mutual Bank documenting that in 2005 she made 11 payments on her first mortgage in the amount of $2,172.17, for a total of $23,893.87, and 11 payments on her second mortgage in the amount of $721.87, for a total of $7,940.57. (Dkt. #102, 7/28/09 Whitworth Decl. ¶14 & Ex. 2.) Taken together, Plaintiff made $31,834.44 in mortgage payments on the house.

Second, Plaintiff states that she made a $1,000 down payment on the house, which she requests that the Court include as part of her compensatory damages. Previously, the undersigned pointed out that Plaintiff had not cited to any documentary evidence - for instance, a canceled check or a notation on the Settlement Statement attached to her Declaration - to substantiate this amount.

In her Supplemental Declaration, Plaintiff states that she was unable to find any documentation to support her claim, and that, as a result of a fire at her house, any documents she had were likely destroyed. (Dkt. #106. Suppl. Whitworth Decl. ¶6a.) Although the undersigned queries whether Plaintiff could have contacted her bank for a copy of the canceled check or an account statement showing the withdrawal of funds from her account used for the downpayment, the undersigned finds Plaintiff's avowal that she made a $1,000 downpayment to be credible.

Third, Plaintiff seeks an award of $2,263.37 for property tax payments she made on the house. (7/28/09 Whitworth Decl. ¶14.) Plaintiff has submitted two Supplemental Property Tax Bills from Contra Costa County documenting that she made tax payments in the amount of $219.99 and $2,043.48, for a combined total of $2,263.37. (7/28/09 Whitworth Decl. Ex. 3.)

Fourth, Plaintiff requests an award of $2,234.25 for insurance premium payments on the house from December 2005 through July 2007. (7/28/09 Whitworth Decl. ¶14.) In support, Plaintiff has submitted a printout of her account history documenting payments made to Farmer's Insurance. (7/28/09 Whitworth Decl. Ex. 4). Additionally, Plaintiff cites the Court to line 1308 of the Closing Statement, which she explains indicates that she pre-paid the first year of insurance from her loan proceeds. (Suppl. Whitworth Decl. ¶6d.) The undersigned has reviewed this documentation and finds that Plaintiff made at least $2,234.25 in insurance premium payments on the house.

Taken the foregoing figures together, Plaintiff has adequately substantiated her claim that she incurred $37,332.06 in out-of-pocket damages. However, Plaintiff also acknowledges this amount must be reduced by the amount of corresponding expenses she would have incurred had she not purchased the house through Defendant Atwater. In her Declaration, Plaintiff indicates that had Defendant Atwater not defrauded her, she would have continued to share an apartment with her husband and pay $455 a month in rent. (7/28/09 Whitworth Decl. ¶17.) Because Plaintiff would have incurred at least $13,195 in rent during the 29 months she lived in the house she purchased, this amount should be offset against the total amount of her out-of-pocket damages, reducing the total to $24,137.06. Accordingly, the undersigned **RECOMMENDS** that the Court award Plaintiff $24,137.06 in out-of-pocket damages.

### 2. **Emotional Distress**

The second component of Plaintiff's compensatory damages concerns damages for Plaintiff's emotional distress. Plaintiff requests an award of $25,000 for her emotional distress. (Dkt. #92, 3/12/09 Whitworth Decl. ¶16; 7/28/09 Whitworth Decl. ¶16; Suppl. Whitworth Decl. ¶4.) Judge Patel previously indicated that based on Plaintiff's testimony and circumstances giving rise to this matter, Plaintiff had credibly demonstrated that she suffered emotional distress as a result of Defendant Atwater's conduct. (Dkt. #99 at 7.) Judge Patel therefore instructed the undersigned to make findings of fact regarding the proper amount of damages Plaintiff should be awarded for such distress. (*Id.*) Plaintiff has not submitted any evidence of economic loss or medical evidence of mental or physical symptoms. Accordingly, the undersigned has considered Plaintiff's statements in her Declarations and her attorney's description of her distress during the evidentiary hearing.

In her Declarations, Plaintiff states that as a result of being lured into the transaction by Defendant Atwater, her relationship with her family has been severely strained, which has caused her significant personal distress. (3/12/09 Whitworth Decl. ¶16; 7/28/09 Whitworth Decl. ¶16.) She also states that the stress of having to figure out how to make house payments she could not afford, and ultimately losing her house, has caused her anxiety, destroyed her confidence, and diminished her self-image. (7/28/09 Whitworth Decl. ¶16.) Plaintiff also indicates that the physical and emotional stress she experienced has caused her to have difficulty sleeping, which requires her to take sleep medication. (3/12/09 Whitworth Decl. ¶16; 7/28/09 Whitworth Decl. ¶16.) Further, she states that she has become extremely sad and fearful about her well-being in her senior years because she invested and lost all of her savings in the house. (*Id.*) She states that the ordeal has caused her to become angry, frustrated, and distrustful, and that she cries easily. (7/28/09 Whitworth Decl. ¶16.)

Like Judge Patel, the undersigned finds Plaintiff's representations to be credible, particularly in light of the circumstances of this case. However, aside from Plaintiff's statements in her Declarations, Plaintiff has not submitted any other evidence of her emotional distress to support the amount of damages she has requested. Thus, having considered Plaintiff's description of her

4

emotional distress, the undersigned finds that an award of $10,000 for emotional distress to be appropriate and **RECOMMENDS** that the Court award this amount.

### 3. Compensatory Damages Already Awarded Against Other Defendants

Finally, Judge Patel noted in her Order that Plaintiff's compensatory damages award against Defendant Atwater must be offset against any compensatory damages that have already been awarded to Plaintiff against any other defendants in this case. (Dkt. #99 at 8.) In her Declaration, Plaintiff indicates that on November 25, 2008, she obtained a judgement of non-dischargeability in bankruptcy court for $24,392.02 against Defendant Coker dba Fidelity Mortgage Company and Pacific Home Brokers. (7/28/09 Whitworth Decl. ¶20 & Ex. 5.) However, Plaintiff states that, to date, she has not received any payment from that judgment. (*Id*.) Because Plaintiff has not recovered any of her compensatory damages from Defendant Coker, there is no basis to reduce the amount of her compensatory damages. Should Plaintiff receive any payment from Defendant Coker in satisfaction of her judgment against him, Plaintiff's compensatory damage award against Defendant Atwater should be reduced accordingly.

### 4. Compensatory Damages Recommendation

In sum, with respect to compensatory damages, the undersigned **RECOMMENDS** that the Court award Plaintiff $24,137.06 in out of pocket damages and $10,000 for emotional distress, for a total of $34,137.06 in compensatory damages.

## B. Punitive Damages

In her Order, Judge Patel found that Plaintiff had established by clear and convincing evidence that she is entitled to punitive damages. (Dkt. #99 at 8-9.) She therefore instructed the undersigned to consider and make recommendations on the appropriate amount of punitive damages to award. Plaintiff requests an award of $20,000 in punitive damages. (7/28/09 Whitworth Decl. ¶18; Suppl. Decl. ¶4.) The question, then, is whether this award is reasonable.

Under California law, when assessing punitive damages courts are to consider: (1) the degree of reprehensibility of the defendant's conduct; (2) the amount of compensatory damages awarded to the plaintiff; and (3) the wealth of the defendant. *Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910,

928 (1978); *see Harrell v. Kepreos*, No. CIV S-06-0849, 2008 WL 619117, at *4 (E.D. Cal. Mar. 4, 2008).

With respect to the first factor, as Judge Patel highlighted in her Order, Defendant Atwater made a series of misrepresentations to Plaintiff, including that he could secure a loan for Plaintiff that she could afford and, after the loan payments exceeded what he had represented to Plaintiff, that he could refinance her loans to reduce the monthly payments. Defendant Atwater also falsified information on Plaintiff's loans applications without her knowledge and misrepresented other material terms of the loans to Plaintiff. As a result of Defendant Atwater's conduct, Plaintiff invested and ultimately lost her entire savings and has experienced emotional distress and strained relations with her family. These facts demonstrate the reprehensibility of Defendant Atwater's conduct and support the need for punitive damages to deter him from similar conduct in the future.

As to the second factor, as indicated above, the undersigned recommends that the Court award $34,137.06 in compensatory damages. Plaintiff's requested amount of punitive damages is thus less than the amount of her compensatory damages and is not excessive in relation to her actual damages.

Looking at the final factor, which focuses on the defendant's financial condition, Plaintiff's counsel indicated during the evidentiary hearing that Plaintiff does not have any evidence on this factor. The California Supreme Court has indicated that evidence of a defendant's financial condition is a prerequisite to an award of punitive damages in order to ensure that the award will actually serve to deter the defendant's conduct. *Adams v. Murakami*, 54 Cal. 3d 105, 119 (1991). Without such information, the undersigned cannot determine whether the amount of punitive damages Plaintiff seeks exceeds the amount necessary to properly punish and deter Defendant Atwater from future misconduct. *See id.* at 110. Consequently, because Plaintiff has not met her burden of producing evidence on this factor, the undersigned **RECOMMENDS** that the Court **DENY WITHOUT PREJUDICE** Plaintiff's request for an award of $20,000 in punitive damages and **GRANT** Plaintiff leave to marshal evidence relating to Defendant Atwater's financial condition and move for reconsideration of the proper amount of punitive damages that should be awarded.

**C.  Damages for Violation of RESPA**

With respect to Plaintiff's damages under RESPA, Judge Patel indicated that Plaintiff needed to provide additional information and evidence on the second prong of the two-prong test for determining whether the yield spread premium Plaintiff paid was permissible. (Dkt. #99 at 10.) In her Supplemental Declaration, Plaintiff indicates that she is abandoning her claim to damages under RESPA.  (Suppl. Decl. ¶¶4, 8.)  Accordingly, this issue is moot.

**D.  Disgorgement Pursuant to California Unfair Business Practices Law**

In her Order, Judge Patel found that Plaintiff had established Defendant Atwater's actions violated California business law, and therefore California's unfair competition law, such that Plaintiff could disgorge Defendant Atwater of any money Plaintiff paid him in connection with his unlawful business practices.  (Dkt. #99 at 11.)  Toward this end, Judge Patel directed Plaintiff to prepare and provide evidence as to what money she paid Defendant Atwater in connection with his provision of real estate services.  (*Id*.)  To guide Plaintiff, the Court explained that the settlement statement that Plaintiff submitted was insufficient to establish the amount she paid to Defendant Atwater.  (*Id*.)  Specifically, the Court noted that although Plaintiff alleged that the statement demonstrates that she paid $22,761 in real estate and mortgage broker fees, the statement does not reflect this amount.  (*Id*.)  Further, the Court noted that even if Plaintiff could establish the total amount in real estate and mortgage broker fees, Plaintiff must provide evidence corroborating her allegations that Defendant Atwater was paid all but $500 of this amount.  (*Id*.)

Reviewing the documents Plaintiff filed after Judge Patel issued her Order, Plaintiff has merely re-submitted the same evidence Judge Patel previously reviewed.  Specifically, in her July 28 Declaration, Plaintiff alleges that, according to the settlement statement attached to her Declaration, Pacific received a broker's commission in the amount of $9,475 and Fidelity received $13,286 in connection with the making of her loans.  (7/28/09 Whitworth Decl. ¶9.)  While Plaintiff cites to certain line number entries in the settlement statement to explain how she calculated these amounts, Plaintiff has not explained why some of the fees appear in the right-hand ledger of the spreadsheet, while other entries - namely, the $9,475 Plaintiff alleges was paid to Pacific and the $9,096 Plaintiff

alleges was paid to Fidelity - are not reflected in the right hand ledger. It is therefore unclear whether these figures were included the total amount of fees Plaintiff had to pay when entering into the loan, or whether they were paid from some other source. During the evidentiary hearing, Plaintiff did not proffer any further explanation as to these figures. Thus, as an initial matter, Plaintiff has not substantiated her allegations that she paid $22,761 in real estate and mortgage broker fees.

Moreover, as indicated above, in order to seek disgorgement of fees paid to Defendant Atwater, Plaintiff has the burden of establishing that *Defendant Atwater* actually was paid those fees. As she did in her Motion for Default Judgment, Plaintiff alleges Defendant Coker stated that Defendant Atwater received all but $500 of the $22,761 in fees that she paid. Plaintiff, however, has not provided any other information about the statement from Defendant Coker, such as when he made the statement, to whom he made it, or the context or setting in which he made the statement. Without such information, the undersigned cannot assess the reliability of the proffered statement. Aside from this statement, Plaintiff has not provided any other evidence to corroborate her allegation that Defendant Atwater was paid all $500 of the fees she paid to Defendant Coker and/or Fidelity or Pacific. As a result, the undersigned finds that Plaintiff has failed to sufficiently establish the amount of money she paid Defendant Atwater in connection with his unlawful business practices. The undersigned therefore **RECOMMENDS** that the Court **DENY** Plaintiff's request for disgorgement of $22,261 from Defendant Atwater.

### E. Attorneys' Fees and Costs

In her Order, Judge Patel found that Plaintiff is entitled to attorneys' fees and costs under RESPA and advised Plaintiff on the proper procedure under the Civil Local Rules for seeking such awards. In her Declaration and supporting materials filed with the undersigned following Judge Patel's ruling, Plaintiff did not provide any information regarding either attorneys' fees or costs. The undersigned pointed out this deficiency to Plaintiff in the undersigned's September 3, 2009 Order and again referred Plaintiff to the Civil Local Rules for guidance on how to brief this issue. In response, Plaintiff states in her Supplemental Declaration that she is no longer seeking an award of

attorneys' fees in connection with her RESPA claim. (Dkt. #106, 9/12/09 Decl. ¶8.) Although Plaintiff did not address costs, Plaintiff did not provide any figure or documentation to support an award of costs. Thus, at this point, Plaintiff appears to have abandoned any request for an award of costs. Based on these developments, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for attorneys' fees and costs as moot.

### III. CONCLUSION

Based on the undersigned's consideration of Plaintiff's Declarations and supporting documents and evidence presented at the hearing, the undersigned **RECOMMENDS** as follows:

Plaintiff should be awarded $34,137.06 in compensatory damages. Plaintiff's request for an award of $20,000 in punitive damages should be **DENIED WITHOUT PREJUDICE**. Plaintiff's requests for damages under RESPA, disgorgement of fees paid to Defendant Atwater, and attorneys' fees and costs should be **DENIED AS MOOT**.

Pursuant to Fed. R. Civ. P. 72(b)(2) a party may serve and file objections to this Report and Recommendation ten (10) days after being served.

**IT IS SO RECOMMENDED.**

Dated: December 15, 2009

_____
Maria-Elena James
Chief United States Magistrate Judge

9